JOSEPH S. AROMANDO, PETITIONER-APPELLANT, v. RUBIN BROS. DRUG SALES CO., RESPONDENT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued October 21, 1957—Decided November 7, 1957.

Before Judges CLAPP, JAYNE and HUGHES.

*Mr. Herbert J. Kenarik* argued the cause for petitioner-appellant.

*Mr. Edward B. Meredith* argued the cause for respondent-respondent.

The opinion of the court was delivered by

CLAPP, S. J. A. D. This is an appeal in a workmen's compensation case. While at work one afternoon, petitioner sustained a coronary infarction, which brought on his present disability. As established by the evidence and the findings of both the County Court and the Division of Workmen's Compensation, he, at the very time of the attack, had been subjected, by the circumstances of his employment, to unusual emotional stress. The principal question presented by these facts is whether the stress was a contributory cause of the infarction. Petitioner recovered a judgment in the Division, but the County Court reversed on the ground that causation had not been established. He now appeals to us.

We will accept the findings below, and the supporting evidence, indicating that petitioner had prior to the attack been suffering from some coronary athero- or arteriosclerosis,

of which he was unaware. We will accept also the finding of the County Court that the infarction was caused by a coronary occlusion and not, as stated by a heart specialist testifying for petitioner, a coronary insufficiency. However, it might be observed, in passing, that the medical opinion, to which the court attached some weight on the theory that it was given by the treating physician, was merely the "admitting diagnosis"—a notation on the hospital record—which had been rendered by a doctor when first called into the case. He did not testify. The "final diagnosis." shown on that record, which was made by the same doctor after he had ˙in fact treated petitioner, does not mention an occlusion. Passing that, however, we are brought to a consideration of the County Court's important finding that there was no medical evidence to connect the emotional stress referred to and the immediately ensuing occlusion.

It is true that the two doctors testifying for the employer, Dr. Asher Yaguda and Dr. Arthur M. Masters, stated, one of them very flatly, that an occlusion cannot be caused by emotional tension or by activity or effort. On the other hand petitioner's case is supported by a solid opinion of the heart specialist testifying for him, that the emotional stress here caused the infarction. This specialist testified further, in effect, that autopsies performed on those who have had an infarction as a result of emotional stress, tensions and strain, show that some of them so afflicted have sustained an occlusion; more often, however, they show an insufficiency. In his view the probabilities therefore were that petitioner had suffered, not an occlusion, but a relative insufficiency. He went on to point out however that "only an autopsy would show" with scientific certainty "whether there was an occlusion" or an insufficiency. *Snoden v. Watchung Borough*, 29 *N. J. Super.* 41 (*App. Div.* 1953), affirmed 15 *N. J.* 376 (1954).

The factual question posed by the decision below—namely, may an unusual emotional disturbance or an unusual exertion be a contributory cause of a coronary occlusion?—has been repeatedly threshed out in the courts as well as the

agency. The following cases all have answered the question in the affirmative, allowing recovery to the petitioner. *Hentz v. Janssen Dairy Corp.,* 122 *N. J. L.* 494 (*E. & A.* 1939); *Passafiume v. H. T. Hynds, Inc.,* 128 *N. J. L.* 27 (*Sup. Ct.* 1942); *Swift & Co. v. Von Volkum,* 131 *N. J. L.* 83 (*Sup. Ct.* 1943), affirmed 132 *N. J. L.* 344 (*E. & A.* 1945); *Lockwood v. Parker,* 132 *N. J. L.* 482 (*Sup. Ct.* 1945); *Breheny v. County of Essex,* 132 *N. J. L.* 584 (*Sup. Ct.* 1945), affirmed 134 *N. J. L.* 129 (*E. & A.* 1946); *Dalton v. Consolidated Laundries Corp.,* 134 *N. J. L.* 27, 32 (*Sup. Ct.* 1946); *Prawatchke v. Sheffield Farms Co. Inc.,* 134 *N. J. L.* 92 (*Sup. Ct.* 1946) (thrombosis); *Weisenbach v. New Milford,* 134 *N. J. L.* 506 (*Sup. Ct.* 1946); *Van Ness v. Haledon,* 136 *N. J. L.* 623, 627 (*E. & A.* 1948); *Moleski v. Bohen,* 1 *N. J. Super.* 136 (*App. Div.* 1948); *Carpenter v. Calco Chemical Div., Amer. Cyanamid Co.,* 4 *N. J. Super.* 53 (*App. Div.* 1949); *Gorelick v. Paramount Slipper Co., Inc.,* 5 *N. J. Super.* 406 (*App. Div.* 1949); *Pisciotta v. Mahoney-Troast Construction Co.,* 8 *N. J. Super.* 213 (*App. Div.* 1950); *Amend v. Amend,* 12 *N. J. Super.* 425 (*Cty. Ct.* 1950); *Margolies v. Crawford Clothes,* 24 *N. J. Super.* 598 (*App. Div.* 1953); *Snoden v. Watchung Borough, supra; cf. Todd v. Northeastern Poultry, etc., Inc.,* 9 *N. J. Super.* 348 (*Cty. Ct.* 1950). Among various cases of the Bureau, which have been reported, see *Eisen v. Jacquard Fabrics, Inc.,* 19 *N. J. Misc.* 526 (*W. C. Bur.* 1941) ("That physical overexertion or effort may be a competent cause in precipitating the development of coronary thrombosis is no longer open to doubt. Like any other diseased condition, arterio-sclerosis of the coronary vessels may, under certain circumstances, be aggravated by such trauma, resulting in a final occlusion"). It appears from the reports that the courts and the Bureau have, time and again, rejected the contrary view advanced by doctors brought into the case by the employer. 1 *Larson, Workmen's Compensation Law,* 566 (1952). Accordingly, compensation was allowed in *Dalton v. Consolidated Laundries Corp.,* 134 *N. J. L.* 27, 32 (*Sup. Ct.* 1946), *supra,* with this observation:

"The differences in the medical testimony lie in the frankly conceded fact that prosecutor's [employer's] experts share the view of others in their profession, that neither effort nor exertion, nor trauma is causally related to coronary thrombosis, while other experts as those for respondent [employee] entertain a contrary view. The views of prosecutor's experts, *as we have had occasion to observe*, ignores the construction which we have given to the meaning of a compensable accident under our statute." (Citing cases.) (Italics added.)

Again in *Breheny v. County of Essex*, 132 *N. J. L.* 584 (*Sup. Ct.* 1945), affirmed for the reasons stated, 134 *N. J. L.* 129 (*E. & A.* 1946), compensation was awarded. The Supreme Court said:

"Their [the heart specialists called by the employer] conclusions were concededly based on the premise that 'effort and trauma are not causally related to coronary occlusion,' a premise which in their view reflects the opinion of leading authorities on the subject. That premise sounds a familiar but discordant tone."

The opinion of the very doctors, who testified for the employer here, has been rejected in reported cases. Thus Justice Heher, for the former Supreme Court, in *Weisenbach v. New Milford*, 134 *N. J. L.* 506 (1946), speaking of Dr. Masters and other medical witnesses for the employer, said:

"These specialists were content to say they entertained the view expounded by a Dr. Masters, that a coronary occlusion cannot result from 'undue exertion or excitement.' Their testimony is not convincing. It is at odds with the strongly preponderant scientific view, and it would seem to be at odds with common experience."

See, too, *Eisen v. Jacquard Fabrics, Inc.*, 19 *N. J. Misc.* 526 (*W. C. Bur.* 1941), quoted from above, rejecting the opinion of Dr. Masters and other doctors. As for Dr. Yaguda, we find that in *Amend v. Amend*, 12 *N. J. Super.* 425, 440 (*Cty. Ct.* 1950), Judge (now Justice) Francis said:

"Dr. Asher Yaguda's opinion loses most of any possible probative force at the very outset of the consideration of his testimony because he expounded a basic medical theory which has been rejected many times by our courts. Specifically, the doctor said he does not believe 'that coronary occlusion is the result of effort.'"

The County Court in the instant case, rejecting the alleged implications of this passage from *Amend,* held that courts cannot arrogate to themselves the authority of a medical expert; that they cannot endorse a medical theory, unless it has attained such notoriety as to become the subject of judicial notice. Some courts have decided, however, that an administrative agency may rely on the agency's medical or scientific experience, at least in special situations or uncomplicated medical matters, provided the parties are apprised of the tribunal's views at a stage in the proceeding which would afford them an opportunity to bring in refuting evidence, and provided the tribunal's views are placed on the record. *McCarthy v. Industrial Commission,* 194 *Wis.* 198, 215 *N. W.* 824, 825, 826 *(Sup. Ct.* 1927); *Contractors v. Pillsbury,* 150 *F. 2d* 310, 313 *(9 Cir.* 1945); 2 *Larson, Workmen's Compensation,* § 79.53 (1952); *cf. N. J. State Bd. of Optometrists v. Nemitz,* 21 *N. J. Super.* 18, 28 *(App. Div.* 1952); *Giordano v. City Commission of the City of Newark,* 2 *N. J.* 585 (1949). And if such decisions are sound, it might be asked (without answering the question) whether in those very unusual situations where the courts, in the course of their duties, have acquired some scientific experience, they would not be stultifying themselves if they were to refuse in a similar fashion to take into account such experience and if (in the manner of blind justice) they closed their eyes to their own experience while weighing the testimony of others. Further *cf. Davis, "Judicial Notice,"* 55 *Columbia L. Rev.* 945, 950 (1955).

However, we do not get to those questions here. This is not a case devoid of medical testimony establishing causation. 2 *Larson, supra,* §§ 79.50–79.54. Here such testimony was presented on the petitioner's behalf, connecting the emotional stress and the infarction, but stating that the intermediate agency between these two points was more likely to have been an insufficiency than an occlusion. As we read the record, the insufficiency was not regarded by petitioner's heart specialist as a necessary part of his thesis that the stress was a causative factor inducing the infarction; hence our finding

that there was an occlusion, not an insufficiency here, does not in any substantial way impair that thesis. Opposed to this witness' views are the opinions of the two specialists testifying for the employer who held that stress cannot be a causative factor here, since petitioner had suffered an occlusion. In resolving this conflict, other matters should be taken into account.

For one thing there is the so-called presumption, relied upon by the County Court here, that a heart attack is the consequence entirely of natural causes. That rule has been repeatedly stated in our reports. However, if it is entitled to no more weight than that ordinarily attributed to a presumption, it adds nothing whatever to the case. For the claimant has the burden of proving that an injury is work-connected, and in carrying that burden, he will rebut the presumption. Is this, then, a presumption to which unusual weight should be ascribed? It might be better if we were to have no presumption at all, than to have one which singles out coronary disabilities for special consideration, and passes by other disabilities which present substantially equivalent difficulties; that is, it might be more advisable if we allowed all such questions of causation to turn upon the circumstances of the case, bearing in mind, *inter alia,* that a finder of fact must always proceed with caution whenever there is a preexisting disease which might of itself have produced the disability. *Cf. Schlegel v. H. Baron & Co.,* 130 *N. J. L.* 611, 612 (*Sup. Ct.* 1943). However, even assuming that the law creates an artificial presumption in connection with heart cases, placing upon an employee some especially heavy burden to establish that his disability is work-connected, we still think there is enough in the facts here to rebut it.

Such a presumption would call first for a scrutiny of the testimony relating to the effect of petitioner's work upon himself—in particular in this case, his own testimony as to the pressures put upon him by his job on the afternoon mentioned and as to the subjective tensions thereby engendered. Can we say that this testimony has the air of

veracity? We think we can. The deputy director commented especially upon the candor and sincerity of the petitioner.

 Such a presumption requires next a consideration of the causal relationship between those tensions and the infarction. The opposing medical proofs have already been set out. In weighing the petitioner's proofs as against the employer's proofs, there must be thrown into the scales the general tendency of the law to apply the Compensation Act in the employee's favor when in doubt. There are also other matters here of considerable cogency. Prior to this heart attack petitioner had "had no sickness" (as he put it) and no history of a previous cardiac ailment. Then, in the very midst of this unusual emotional incident, he sustains an occlusion. The sequence of events—the immediacy of the attack in relation to the episode of stress—bespeaks a causal connection. *Galloway v. Ford Motor Co.,* 5 *N. J.* 396, 400 (1950); *Fink v. Paterson,* 44 *N. J. Super.* 129, 135 (*App. Div.* 1957); *Roma v. Associated Transport, Inc.,* 134 *N. J. L.* 279, 281 (*Sup. Ct.* 1946). To Dr. Masters this was mere coincidence. But, after speaking of Dr. Masters' opinion on this subject, Justice Heher for the former Supreme Court said in *Weisenbach v. New Milford,* 134 *N. J. L.* 506, 509 (1946):

"Mere coincidence is not a permissible deduction in the face of evidence which, according to the teachings of long experience, demonstrates a causal relationship."

See too *Snoden v. Watchung Borough,* 29 *N. J. Super.* 41, 53 (*App. Div.* 1953), affirmed 15 *N. J.* 376 (1954).

The above cited authorities, allowing recovery where a petitioner has sustained an occlusion, may at least be said to be authoritative, *passim,* for the view that the circumstances of this case call for our acceptance of petitioner's medical proofs. In our opinion, the circumstances and proofs here rebut the presumption and entitle petitioner to recover.

Judgment of the County Court reversed, and that of the Division reinstated.